# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-3200

_____

United States of America

*Plaintiff - Appellee*

v.

Dennis Jerome Wright, Jr., also known as Skooter Boo

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: June 13, 2016
Filed: August 2, 2016
[Unpublished]

_____

Before SMITH, MELLOY, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

After Dennis Jerome Wright, Jr., successfully appealed his career-offender designation, the district court,[1] on remand, resentenced him to 78 months'

---

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

imprisonment after departing downward based on substantial assistance from the Guidelines range of 84 to 105 months' imprisonment. On appeal, Wright contends that his 78-month sentence is both procedurally unsound and substantively unreasonable because the district court (1) failed to follow the three-step procedure in determining his sentence, and (2) failed to consider the mitigating factors of his mental health conditions and intellectual disability. We affirm.

## I. *Background*

On August 13, 2012, Wright pleaded guilty to one count of distribution of crack cocaine, in violation of 21 U.S.C. § 841(a). A judicial determination of Wright's competency delayed sentencing more than two years. In August 2014, Wright was found competent to proceed. He was sentenced on September 18, 2014.

At his original sentencing, Wright sought to lower his Guidelines range and sought a sentence below that range. He objected to his classification as a career criminal, asked the court to depart downward because of his diminished mental capacity, and argued that his criminal history was overstated. Over Wright's objection, the court designated him a career offender with a resulting Guidelines range of 210 to 262 months' imprisonment.

After calculating the Guidelines range, the district court considered the parties' motions for downward departure, granting the government's motion under U.S.S.G. § 5K1.1 (substantial assistance) and denying Wright's motion under U.S.S.G. § 5H1.3 (mental and emotional conditions). After some discussion regarding Wright's IQ and mental health issues, the court varied downward to 144 months' imprisonment. Wright timely appealed and successfully argued that the court's career-offender finding was erroneous. This court remanded the case for resentencing.

Wright was resentenced on July 21, 2015. Prior to his resentencing, Wright filed a sentencing memorandum in which he renewed his motion for a downward

-2-

departure under U.S.S.G. §§ 5H1.3 and 5K2.13 (diminished capacity). At resentencing, the court calculated Wright's Guidelines range to be 84 to 105 months' imprisonment. Neither party objected. The government then renewed its § 5K1.1 motion for substantial assistance, again proposing a reduction of five percent, resulting in a recommended sentence of around 80 months' imprisonment. The court then commented, "I know, though, that that's one of the reasons[, substantial assistance,] the Court departed and another was just a variance because of his personal characteristics." Wright's counsel then commented that he "thought the variance was based on [Wright's] mental health issues." The court replied that mental health issues are "personal." The court then engaged both parties and a probation officer from the U.S. Probation Office in the following exchange regarding some confusion surrounding how the court had arrived at its first sentence; specifically, whether the court had granted a variance or a departure based on Wright's mental-health issues:

> [Wright's counsel]: I didn't recall that we talked—I know I talked to [the Assistant United States Attorney] about it several times and we couldn't agree on a percentage, but I didn't think the Court had actually *departed downward* last time based on anything other than a *variance for a mental health issue* because you went down from 210 to 144 months.
>
> THE COURT: Yeah, I did. That's a chunk.
>
> ***
>
> [Wright's counsel]: We appreciate that.
>
> THE COURT: I will have to read—maybe I ought to take a little break and read the transcript because I was under the impression that I was also granting [a] 5K; in other words, that I did both.
>
> [Probation Officer], can you help me with that?
>
> THE PROBATION OFFICER: Yes, ma'am. In the statement of reasons, it just indicates why the Court would impose a sentence below

the guidelines. There are two places checked. One is for the departure, which refers to a 5K1.1 motion based on substantial assistance. It also has marked a sentence outside the guideline, which is a variance, and essentially has his personal characteristics as the reason for the variance.

THE COURT: In other words, his mental condition, intellectual condition.

[Wright's counsel]: Uh-huh.

THE COURT: And so is there any reason why I should not approach this in the same way?

[Wright's counsel]: No. But I again go back to the point I raised, Judge, that with the departure from 210 to 144 based on—anything above 5 percent is based on his mental health history and his impairments, then I think the Court has to come down accordingly on this sentence. Whatever range, you have to cut it by the same percentage, I believe. I have looked, and I can't find any case law that substantiates that. It may be a[n] [issue of] first impression in this circuit and elsewhere.

THE COURT: Oh, this is—I overrule that, and you can appeal again; but this is the way I look upon Mr. Wright's case. He had to be sentenced, I thought, under the armed career offender—not armed. I'm sorry—career offender, career criminal. And that was a very stiff sentence.

[Wright's counsel]: Yes.

THE COURT: And I thought that—and usually in these drug cases anyway, I think the sentences are too long. And in his case, because I knew that he had made some efforts at cooperation, I knew from letters—and by the way, I am going to make the letters I have received for today's hearing a part of the record. But I knew from the letters, he had some intellectual limitations and had trouble, maybe, with some anger issues and things of that nature. I knew that his family cared a lot

about him, and they still do. And with all of that, I just thought it would be fair to reduce that sentence down to 12 months—excuse me, 12 years. Not 12 months, 12 years. And it was still a very stiff sentence.

Now that I know I was in error to sentence him as a career offender, now I am looking at a guideline range of 84 to 105 months. I think it is fair to consider the same things; that is, his limitations and also the motion for a departure which was, in this instance, a 5 percent departure.

I have had a lot of experience with Mr. Wright, some of which is under seal and will remain so. But in other words, he was in the supervision of the Court, on bond, for a long time for a number of reasons. And so I thought that that sentence was, the 144 months, was a merciful one under those circumstances.

Now that I am looking at a guideline range of 84 to 105 and I look at his serious criminal history which is a VI, notwithstanding he is no longer a career offender, I am inclined to take another look at a guideline sentence or a slight deviation from a guideline sentence because I don't think that I am bound percentage-wise or any other way to follow that. And if it were percentage-wise to do it—I have to admit we thought about that—he would be getting something like a 58-month sentence. And I can't go below 60.

(Emphases added.)

After hearing from a member of Wright's family, the court pronounced judgment, "sentenc[ing] him . . . to a term of 78 months' incarceration, which is a departure from the guidelines based on 5K1.1, based on the motion that [the government] renewed today and that he made at the first sentencing."

## II. *Discussion*

On appeal, Wright argues that his 78-month sentence is both procedurally unsound and substantively unreasonable.

"We consider the imposition of a sentence first for procedural error reviewing the district court's findings of fact for clear error and its application of the guidelines to those facts de novo." *United States v. Grimes*, No. 15-3309, 2016 WL 3254218, at *3 (8th Cir. June 14, 2016) (citation omitted). If we find no procedural error, then we next "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* (quotation and citation omitted). "A district court abuses its discretion when it (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *Id.* (quotation and citation omitted).

"In sentencing a defendant, the district court should follow three steps: (1) calculate the advisory Guidelines range; (2) consider whether any departure is warranted under the Guidelines; and (3) consider the sentencing factors enumerated in 18 U.S.C. § 3553(a) and impose a reasonable sentence." *United States v. Chettiar*, 501 F.3d 854, 858–59 (8th Cir. 2007) (citation omitted).

Wright argues that the district court failed to follow this three-step process because it failed to consider his § 5H1.1 downward-departure motion based on his mental health. Wright asserts that "[t]he district court ignored the request for a departure based on this factor." We disagree.

Both on appeal and before the district court, Wright has used the terms "departure" and "variance" interchangeably. Regardless of the designation, the district court made clear that it was "overruling" Wright's argument that it had to sentence him under the same formula that it used at his original sentencing; that is, that the court must give him a five-percent reduction based on substantial assistance and anything beyond that five-percent must be a reduction based on Wright's "mental health history and his impairments." The court explained why it was rejecting mental health as a basis for lowering Wright's sentence at resentencing: Under the prior career-offender

Guidelines range, Wright's sentence was excessive in light of his mental health, and a reduction in sentence was warranted. By contrast, the court found the revised Guidelines range appropriate in light of the same factors— "that is, [Wright's] limitations and also the motion for a departure [based on his substantial assistance]," as well as Wright's "serious criminal history[,] which is a VI, notwithstanding he is no longer a career offender." "Similar factors may justify either a variance or a traditional departure. The distinction [between a variance and a departure] is immaterial, however, where, as here, the district court appropriately considered and explained the relevant § 3553(a) factors." *See United States v. Woods*, 670 F.3d 883, 888 (8th Cir. 2012) (alteration in original) (quotation and citations omitted).

In summary, Wright has not shown "that he would have received a more favorable sentence had the district court conducted [an explicit,] traditional departure analysis prior to considering the § 3553(a) factors." *See id*. (citation omitted).

We also find Wright's 78-month sentence to be substantively reasonable, as it is a within-Guidelines sentence, and the district court was aware of—and rejected—Wright's argument for a reduction based on his mental health. *See United States v. Johnson*, 619 F.3d 910, 922 (8th Cir. 2010) ("[T]he district court was aware of [the defendant's] arguments, and we therefore presume that the district court considered and rejected them." (citation omitted)).

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court

_____